[Civil No. 1838. Filed December 28, 1920.]

[193 Pac. 1021.]

# HEFFERN CO–OPERATIVE CONSOLIDATED GOLD MINING AND MILLING COMPANY, a Corporation, Appellant, v. THEODORE E. GAUTHIER, as Administrator of the Estate of ALBERT HEFFERN, Deceased, Appellee.

1. CORPORATIONS—MAJORITY STOCKHOLDER CANNOT DEAL WITH PROPERTY FOR HIS OWN BENEFIT.—While in a narrow sense the holder of the majority of the stock of a corporation does not occupy a relation of trust, in a broader sense he owes to the other stockholders and the corporation the duty to exercise good faith, care, and diligence to conserve the property and protect the interests of the minority stockholders, and any act of his in dealing with the property in violation of this duty for his own selfish interests cannot be recognized.

2. CORPORATIONS—APPROPRIATION OF PROPERTY BY MAJORITY STOCKHOLDERS MAY BE RESCINDED.—Majority stockholders cannot appropriate corporate property for their own benefit and advantage, and, where the act is in violation of the duty arising from their fiduciary relation, the corporation can rescind the act.

3. CORPORATIONS—ENTITLED TO RESCIND MORTGAGE TO MAJORITY STOCKHOLDER GIVEN FOR INADEQUATE CONSIDERATION.—For the holder of the majority of the stock of a corporation, who was also its president and managing director and dominated and controlled its business affairs, by a vote of his stock to procure a mortgage of $10,000 in consideration of an uncompleted mill worth only $5,000, was oppressive and unfair, and the transaction could be rescinded by the corporation, though there was no dissenting vote by other stockholders.

4. CORPORATIONS—NOT ENTITLED TO AVOID NOTE AND MORTGAGE FOR INADEQUATE CONSIDERATION WITHOUT PAYING VALUE OF PROPERTY RECEIVED.—A corporation could not avoid a note and mortgage executed to its majority stockholder for an inadequate consideration without paying the reasonable value of the property received as their consideration.

5. EVIDENCE—WRITTEN CONTRACT HELD PRESUMED TO EXPRESS WHOLE ENGAGEMENT OF PARTIES—Where a written contract for the trans-

---

1. For authorities discussing the question of right of majority stockholders to purchase or lease corporate property, see notes in 14 **Ann. Cas.** 920; 16 **L. R. A.** (N. S.) 892.

fer of shares of stock did not contain an alleged oral agreement by the seller to accept treasury stock in payment of a note and mortgage of the corporation held by him, it must be presumed that the whole engagement of the parties was reduced to writing.

APPEAL from a judgment of the Superior Court of the County of Cochise. A. G. McAlister, Judge. Judgment reversed, with directions.

### STATEMENT OF FACTS.

Action brought by Theodore E. Gauthier, as administrator of the estate of Albert Heffern, deceased, on a note for $10,000 given by the Heffern Co-operative Consolidated Gold Mining & Milling Company, a corporation, to the deceased, Albert Heffern, in his lifetime, and to foreclose a mortgage executed to secure the payment of said note. The answer of the corporation charges the deceased with fraud in procuring the execution of the note and mortgage, and prays for the cancellation of the instruments and for other equitable relief. The trial judge (sitting without a jury) found for Gauthier, as such administrator, and rendered a judgment in his favor for $10,850 and $21.20 costs, and ordered the foreclosure of the mortgage and a sale of the property, in satisfaction of the judgment. The essential facts of the case are these: Albert Heffern, the deceased, was the president and managing director of the corporation, the capital stock of which consisted of 5,000,000 shares, of the par value of $1 each. There had been issued at the time of the execution of the note and mortgage 1,200,-000 shares of the capital stock, of which Albert Heffern owned and possessed, in his own right, 625,-000 shares, a clear majority. It is fairly well established by the evidence that Albert Heffern, by reason of such ownership of a majority of the outstanding shares of the corporation, dominated and controlled the affairs of the company and shaped its business

policies and transactions. He practically drew to himself and used all the powers of the corporation. Heffern was present at the stockholders' meeting which adopted the resolution authorizing the board of directors to execute the note and mortgage in suit, and he cast the vote of all the stock held by him in his own right and other stock for which he held proxies in favor of the resolution. There were represented at the meeting 1,041,000 shares, 159,000 shares being unrepresented. No dissenting vote was cast against the resolution. One of the shareholders present, and representing 16,000 shares, did not vote one way or the other, explaining, "I did not vote either way; I knew it was useless." The resolution recited that the consideration for the note and mortgage was a mill sold by Heffern to the company erected or to be erected upon the property of the company. The mill, as a matter of fact, was never completed or put in running order. It was proven by the uncontradicted evidence that the mill, in its unfinished state, was not worth more than $5,000.

Mr. Albert M. Sames and Messrs. Manatt & Stephenson, for Appellant.

Messrs. Flanigan & Murry, for Appellee.

BAKER, J. (After Stating the Facts as Above.)— There is a prevailing idea with a great many men that majority shareholders of a corporation can conduct the business affairs of the corporation as they see fit. That is not so. While in a narrow and restricted sense it cannot be said that the holder of the majority of the stock of the corporation occupies a relation of trust, yet it can be said in a larger and broader sense that he occupies a fiduciary relation to the holders of the minority stock and the corporation,

who can only act through him.   In the broader sense the holder of the majority of the stock owes to the other stockholders and the corporation the duty to exercise good faith, care, and diligence to conserve the property of the corporation and to protect the interests of the minority stockholders, and any act of his, in dealing with the property of the corporation, in violation of this duty, for his own selfish interests and gain, will not and cannot be recognized.   Majority shareholders can no more, for their own benefit and advantage, appropriate the property of the corporation, than the minority shareholders, and, where the act is in itself a violation of the duty that arises from their fiduciary relation, the corporation can rescind that act.   7 R. C. L., Corporations, par. 286, and cases cited.

In *Meeker* v. *Winthrop Iron Co.* (C. C.), 17 Fed. 48, it is said:

"The ownership of a majority of the capital stock of a corporation invests the holders thereof with many and valuable incidental rights.   They may legally control the company's business, prescribe its general policy, make themselves its agents, and take reasonable compensation for their services.   But, in thus assuming the control, they also take upon themselves the correlative duty of diligence and good faith.   They cannot lawfully manipulate the company's business in their own interests to the injury of other corporators.   Any contract made by them in behalf of their principal with themselves or with another for their personal gain would be voidable at the option of the company."

See, also, 4 Thompson on Corporations, pars. 4485–4487; *Gamble* v. *Queens County Water Co.,* 123 N. Y. 91, 9. L. R. A. 527, 25 N. E. 201; *Hyams* v. *Calumet & Hecla M. Co.,* 221 Fed. 529, 137 C. C. A. 239; *Jones* v. *Missouri Edison Electric Co.,* 144 Fed. 765, 75 C. C. A. 631; *Marks* v. *Merrill Paper Mfg. Co.*

(C. C.), 188 Fed. 850; *Wheeler et al.* v. *Abilene National Bank Building Co. et al.,* 159 Fed. 391, 14 Ann. Cas. 917, 16 L. R. A. (N. S.) 892, 89 C. C. A. 477.

It is held in *United States Steel Corp.* v. *Hodge,* 64 N. J. Eq. 807, 60 L. R. A. 742, 54 Atl. 1, that a stockholder's personal interest will not disqualify him from voting his shares at a stockholders' meeting, but no suggestion is there found to the effect that any measure could be given vitality by either illegal or fraudulent action by stockholders. Manifestly the transaction whereby Heffern obtained the mortgage in suit was a breach of the duty which he owed to the corporation and the other stockholders. For a single holder of the majority of the shares of the corporation, who is also its president and managing director, and who dominates and controls the business affairs of the corporation, to procure by the vote of his majority shares a mortgage in the sum of $10,000 upon the property of the corporation for an uncompleted mill worth only $5,000, was oppressive and unfair, and justifies the corporation in rescinding the transaction. We think this is a self-evident proposition which requires no argument to support it. It is no answer to the conclusion to say that at the stockholders' meeting there was no dissenting vote to the resolution. What would it have availed for any stockholder to cast a contrary vote? The helplessness of the other stockholders was well expressed by the one who held 16,000 shares, ''I did not vote either way; I knew it was useless.'' It is very clear to us that the mortgage is voidable.

In this case the corporation seeks to avoid the mortgage. Before it can be permitted to do this, it must account to Gauthier, as such administrator, for any benefit it has received from the transaction. 4 Fletcher, Cyc. Cor., par. 2403. It is a maxim of equity that he who seeks equity must do equity.

*Thomas* v. *Brownsville etc. R. R. Co.,* 109 U. S. 522, 526, 27 L. Ed. 1018, 3 Sup. Ct. Rep. 315; *Neblett* v. *Macfarland,* 92 U. S. 101, 103, 23 L. Ed. 471 (see, also, Rose's U. S. Notes). The rule of the voidability of such transactions was adopted to secure justice, not injustice, to prevent wrong, not substitute one wrong for another, as is said in *Duncomb* v. *New York, H. & N. R. Co.,* 84 N. Y. 190. In the Thomas case the company gave a mortgage to secure the payment of bonds which it had issued to certain persons who had contracted to build the road. The bonds not having been paid when they became due, foreclosure was commenced. A defense was made on the ground that the contract on account of which the bonds were issued was fraudulent and void. Foreclosure was resisted, and the court was asked to set aside the mortgage. It appeared that those claiming under the mortgage had done a certain amount of construction work for the company. The court, applying the principle that he who seeks the aid of equity must do equity, held that the company was bound to pay the value of the work done before it could have the relief prayed. To the same effect are *Driver, Admr.,* v. *Hudspeth,* 16 Ala. 348; *Merriam* v. *Goodlett et al.,* 36 Neb. 384, 54 N. W. 686; *Booth et al.* v. *Hoskins,* 75 Cal. 271, 17 Pac. 225; *Gage* v. *Riverside Trust Co.* (C. C.), 86 Fed. 984. To permit the corporation to defeat the mortgage, without paying the reasonable value of the mill, would, it seems to us, be inequitable and unjust. That amount is $5,000.

We do not concur in the contention of the corporation that Gauthier, as such administrator, should be required to accept the 100,000 shares of the corporation tendered by the company and cancel the mortgage. This contention is based on oral testimony that at the time of the execution of a written contract for the transfer of a number of Heffern's shares to

Texas parties Heffern agreed that he would reimburse himself by taking 100,000 shares of the treasury stock of the corporation. But this stipulation is not found in the written contract. We must presume that the whole engagement of the parties was reduced to writing. *S. H. Kress & Co.* v. *Evans,* 21 Ariz. 442, 189 Pac. 625.

The judgment is reversed, with directions to enter a judgment in favor of the appellee for the sum of $5,000, with interest. If the judgment be satisfied by a sale of the company's property or otherwise, the note and mortgage shall stand canceled.

CUNNINGHAM, C. J., and ROSS, J., concur.