[Civil No. 2761. Filed October 7, 1929.]

[281 Pac. 38.]

In the Matter of the Estate of BENJAMIN SCHUS-
TER, Deceased. MARGUERITE SCHUSTER
ELLISON, Appellant, v. ADOLF SCHUSTER,
as Trustee, Appellee.

See Appeal and Error, 3 **C. J.**, sec. 618, p. 718, n. 50; sec. 623, p. 727, n. 99; sec. 636, p. 742, n. 3; 4 **C. J.**, sec. 2728, p. 778, n. 75; sec. 2855, p. 885, n. 39.

Executors and Administrators, 23 **C. J.**, sec. 400, p. 1181, n. 90.

Trusts, 39 **Cyc.**, p. 291, n. 84, p. 295, n. 11, p. 360, n. 84, p. 368, n. 62, p. 478, n. 5, 12, p. 479, n. 14, p. 480, n. 23, p. 497, n. 34, p. 498, n. 48, p. 499, n. 55, p. 500, n. 72, p. 501, n. 77, 79, p. 505, n. 13.

Mr. Theron J. Bryne and Messrs. Newlin & Ashburn, for Appellant.

Mr. Levi S. Udall, Mr. Sidney Sapp and Messrs. Chalmers, Fennemore & Nairn (Mr. Henry W. Allen and Mr. W. E. Ryan, of Counsel), for Appellee.

LOCKWOOD, C. J.—This is an appeal from an order of the superior court of Apache county settling the account of Adolf Schuster as testamentary trus-

tee under the will of his brother Benjamin Schuster. The facts leading up to the filing of the account may be briefly stated as follows:

Adolf Schuster, hereinafter referred to as appellee, and Benjamin Schuster, hereinafter called the deceased, had for many years prior to November 27th, 1911, been equal partners in the conduct of a general livestock and mercantile business in Navajo and Apache counties. The relations between them were unusually intimate and confidential, even for brothers, the title to practically everything owned by them, whether pertaining to the partnership business or not, being held in common. On the date mentioned Benjamin Schuster, being in failing health, made a will, by the terms of which appellee, another brother, Max Schuster, and Josephine Schuster, the wife of deceased, were appointed joint executors, and also trustees of a trust estate created by the will. December 5th a codicil was added providing that the business theretofore run as a partnership should be incorporated. The provisions of the will and codicil necessary for the consideration of this case read as follows:

"To take, manage and control the same; to invest and re-invest the same; to improve, sell, transfer and convey upon such terms as they may deem to be for the benefit of the estate, any of the property thereof; to borrow money, and to execute mortgages and renewals and extensions of mortgages thereon; to purchase additional real and personal property, and to improve, mortgage and convey the same, and to keep the estate, or so much thereof as to them may seem proper, in the form of improved, income-bearing real property, or well secured interest bearing loans; to continue the conduct and operation of the partnership business between myself and my said brother Adolf Schuster above referred to, or to sell or to liquidate the same, or any part thereof, or to join in or consent to such sales, or transfer or re-organization of said partnership business as will place the same in a cor-

poration, and to evidence the interest of my said estate, or of this trust, in such business so incorporated by certificates of stock therefor; and in the premises my said beloved brother, Adolf Schuster, is hereby given the right to himself in his individual capacity, become the purchaser of any of the property, or interest of my said estate, or of this trust, in said copartnership, or in any corporation that may be formed to take the same over, provided that such purchase by him shall be approved and confirmed, upon the petition of any two of the trustees hereunder, by the court that may have jurisdiction of the probate of this estate; to receive and collect the rents, issues and profits of all of my property and estate, and after paying the expenses incident to the management and control of said property and the administration of said trust, including the payment of taxes, necessary repairs, interest on indebtedness, or whatever may be a charge against the property of said estate, or. the maintenance thereof, to hold and use the principal, and to apply the rents, issues and income thereof as follows, to-wit:

"(a) Eight-twelfths (8/12) of all of such rents, issues and income to my said beloved wife, Josephine Schuster, during her natural life, to be paid to her semi-annually, or monthly if more convenient to said trustees; and upon her death, said trust as to her shall terminate, and the principal, to-wit, said eight-twelfths (8/12) shall go to and vest in, and I hereby give, bequeath and devise the same. in that event, and upon the happening of that condition, unto my said beloved four children, share and share alike. As to the share, however, that hereunder would go to any of my said four children before such child reaches the age of twenty-seven years, such share shall be held under the same trust as is hereinafter set forth in paragraphs (b) and (c) hereafter, and for the same term and in the same manner. The share of any deceased child, if married,. to go to its issue then surviving share and share. alike, and if unmarried, then to be divided share and share alike among my said surviving children, or to their issue respectively, share and share alike.

"(b) As to the remaining four-twelfths (4/12) of said rents, issues and income, I desire that each of my said four children shall receive the benefit thereof, to-wit, one-fourth each of them, for their education, maintenance and support, respectively, and to that end my said trustees are to pay to my said beloved wife, Josephine Schuster, one-fourth of said four-twelfths for each of my said children during its minority for its maintenance, education and support, and after each of my said children reaches its majority, the income of such one-fourth shall be paid by my said trustees to such child direct until the principal of said one-twelfth, under the terms of this Will, is paid to such child.

"(c) As to the principal of said four-twelfths, my said trustees shall continue to manage the same under their general powers heretofore given to them as trustees, until my said four children respectively reach the age of twenty-two years; and as soon as any of my said four children reach the age of twenty-two years my said trustees shall pay over and deliver one-half of such one-twelfth, to-wit, one-twenty-fourth, of my said estate, to such child freed from the further operation of this trust, and as soon as said children reach the age of twenty-seven years, my said trustees shall pay over and deliver and distribute to such child the other half of said one-twelfth, to-wit, one-twenty-fourth of my said estate, freed from the further operation of this trust, it being understood that the interest or income above referred to is diminished proportionately after the first half of the share of said child is delivered to it at the age of twenty-two years as aforesaid. If any of said children shall marry, the first half of said principal, to-wit, one-twenty-fourth thereof, shall be payable upon such marriage, and the second one-half five years thereafter, instead of at the fixed period of twenty-two years and twenty-seven years. Upon the payment or distribution of such second half the same shall be owned and held by said children, their heirs and successors thereafter, free from the further operation of this trust.

"Seventhly. I hereby appoint the same persons as the executors of this my Last Will and Testament

whom I have appointed as my trustees, to-wit, my said beloved brothers, Adolf Schuster and Max Schuster, and my said beloved wife, Josephine Schuster, and with the same rights and powers as they have as trustees, and I direct that no bond or undertaking be required of them or either of them, in the capacity of executors or trustees. I hereby authorize and empower my said executors and the survivors or survivor of them, and likewise my said trustees and the survivors or survivor of them, to sell, convey, mortgage, lease, and otherwise deal in, with, or dispose of any or all of the property of my estate, on such terms and at such times, and in such manner as to them shall seem best, and without the permission or other order of any court therefor, and to make, execute, acknowledge and deliver any and all instruments in writing necessary, or proper, or requisite therefor. However, as to any sale of my interest in the said co-partnership existing between my said brother Adolf Schuster and myself, or as to the purchase thereof by him, or for his benefit, directly or indirectly, or as to the re-organization or other handling thereof so as to incorporate the affairs of the business of said co-partnership into a corporation, and to issue stock therefor, I do specially hereby authorize and empower my said executors to make such sale, and my said brother Adolf Schuster to become a purchaser thereat, and I do authorize my said executors to cause a corporation to be formed, incorporating said partnership business, and issuing stock therefor to my said estate for its interest in said partnership —provided such purchase by my said brother, or such incorporation, be confirmed by the order of the court having jurisdiction of the matter of my estate, upon the petition of any two of my said executors. The same powers and rights with reference to incorporation or purchase of said property are given to each of my said trustees or executors as are herein given to my said trustee and executor, Adolf Schuster. And in case of sale, or in case of incorporation the proceeds of such sale, or the shares of stock in said corporation so to be formed, shall be held under the trusts and provisions of this Will in lieu of the said partnership property itself, and the trust with refer-

ence to such original partnership property shall upon such sale or incorporation be terminated. I make these provisions giving such authority to purchase or to incorporate to my said two brothers and to my said beloved wife, although such powers are not usually given to executors or to trustees, because I have every confidence in them, and in their judgment, and desire that if agreeably to law it can be done, they may become the owners of such business, or may become holders of stock in a corporation, together with my said estate, for the future carrying on of said business, if that shall seem to them best, rather than to be forced to sacrifice the higher interests of my estate and of themselves by liquidating the said business and selling the same to other persons, or by continuing to operate and carry on said business while executors and trustees, with the burdens and responsibilities of loss incidental to the carrying on of business by executors or trustees.

"Eighthly. I hereby nominate and appoint my said beloved wife, Josephine Schuster, the guardian of the persons of my said four children, and appoint my said wife, Josephine Schuster, and my said two brothers, Adolf Schuster and Max Schuster, and the survivors or survivor of them as guardians of the estates of my said four children, and each of them, and I direct that no bond or undertaking, except such as the law may make absolutely mandatory, if any, be required of them, or any of them; and I hereby authorize and empower them as such guardians to sell, convey, mortgage, lease and otherwise deal with and dispose of any and all property that may come into their hands as such guardians, on such terms and at such times and in such manner as to them shall seem best, and without the permission or other order of any court therefor, and without any special bonds in any special proceedings in the matter of such guardianship, except as may in law be mandatory; also to make, execute, acknowledge and deliver any and all instruments in writing necessary or proper or requisite therefor; and I do in general give to said guardians the same powers and rights that I have given to them herein as trustees and as executors,

"I declare that I have since the making of said Will made a division as between myself and Adolf Schuster of certain of our partnership property, and that I in conjunction with Adolf Schuster and others am about to take steps to incorporate, or cause to be incorporated, the co-partnership business of A. & B. Schuster referred to in said Will into a corporation to be known as the A. & B. Schuster Company, and to be incorporated under the laws of Arizona, and that I hereby give, devise and bequeath the stock or interest in said corporation that may represent, or be paid for, my interest in said co-partnership to be had and held and used, or bought and sold, upon the same trusts and in the same way in which I have by said Will given my partnership property, and I do expressly hereby give to the executors, trustees and guardians named in said Will the same powers and rights to deal with, and to purchase for themselves if they so desire, and with the same approval of Court, any interest that my estate may have in such corporation, or in the stock thereof—as I have given to my said executors, trustees or guardians concerning and over the said partnership interests.

"I further provide, will and desire that no other action shall be had in the Probate Court in relation to the settlement of my estate than the probating and recording of said Will and this Codicil, and the return of an Inventory, Appraisement and list of claims of my estate."

On the same day a partial division of the common property was made, Benjamin Schuster taking as part of his share of such division what will hereinafter be called the El Cedro ranch, and articles of incorporation of the A. & B. Schuster Company, hereinafter called the company, were prepared. Appellee, deceased, their respective wives, and Max Schuster were named as the incorporators and directors, and all signed the articles. A stockholders' meeting was then held, and the minutes provided that all the then property of the partnership should be transferred to the company, and that the stock consisting of 1,500 shares be issued—734 shares to

appellee, 734 shares to Benjamin Schuster, 5 shares each to their respective wives, 15 shares to Max Schuster, and 7 shares to Max Schuster as trustee. These minutes were also signed by all the incorporators. Benjamin Schuster died on December 10th, 1911. On December 26th a directors' meeting was held, the three trustees being present, the stock was ordered issued as aforesaid, and it was agreed that it was for the best interests of all parties concerned that the El Cedro ranch should be transferred to the company, the estate of deceased being given in lieu thereof a note of the company for $11,500, the appraised value of the property. It was further agreed that 5 shares of the stock issued to Max Schuster as trustee be sold to one Paul Meyerhoff, the proceeds of the sale being divided equally between appellee and the estate. Meyerhoff then was elected a director and the secretary of the company in place of Max Schuster, who resigned.

The will was probated January 29th, 1912, and the executors appointed in accordance therewith. An inventory and appraisement was filed September 9th, 1912, and a decree of final distribution made February 18th, 1913. This decree distributed all the property of the estate to the trustee under the terms and conditions of the will, but without specifying of just what the estate consisted, except the homestead, which was set aside to Josephine Schuster as her separate property. Since the will was what is known as a "nonintervention will" no accounting was ever made by the executors as such. They were thereafter discharged, and no appeal has ever been taken by anyone from the probate proceedings or any part thereof.

Although there were three trustees, it appears clearly from the record that appellee from the time of the death of deceased had the entire active management of the trust estate, and that he handled it

in whatsoever manner seemed best to him, as though it were his own private property, with the silent, if not the active, consent of the other trustees as well as the beneficiaries. No complete accounting of the estate was ever made by him, either to the superior court or to the other trustees or the beneficiaries, until the filing of the one involved in this action in 1927. As each of the minor beneficiaries reached the age of 22 he turned over to them, either in cash, credits or property, approximately $6,000, taking their receipt therefor and an acknowledgment that it represented the one twenty-fourth part of the estate then due them. In each case the trustees petitioned the superior court for a hearing, which was had, on due notice to the interested parties, and the settlement approved. No appeal was ever taken from any of these orders. In April, 1927, appellee filed an account as for all the trustees, Max Schuster having died in 1925, covering the trust estate from the death of Benjamin Schuster. To this account Marguerite Schuster Ellison, the daughter of deceased, and one of the beneficiaries under the will, filed various objections, and was later joined therein by the other beneficiaries. The matter was heard, all the parties being represented by counsel, and evidence, both oral and documentary, was taken for a period of some eight days, the court thereafter making an order which modified the account as rendered in some respects, and as modified approved it, whereupon Marguerite Schuster Ellison, hereinafter called appellant, has brought the matter before us for review, the other beneficiaries not appealing.

Objection is made to the majority of the assignments of error, some nineteen in number, on the ground that they attempt to raise in this court matters not included in the objections made to the account in the court below, and not presented to the trial court. It is of course the rule that we will not con-

sider objections made for the first time in this court, nor will we try the case on a different theory from that presented in the lower court. *Tevis* v. *Ryan,* 13 Ariz. 120, 108 Pac. 461; *Arizona Power Co.* v. *Racine-Sattley Co.,* 13 Ariz. 283, 114 Pac. 558; *Dey* v. *Hill,* 20 Ariz. 466, 181 Pac. 462. The exceptions to the account filed in the lower court are in many cases very general in their nature, and, had they been objected to there, that court would doubtless have sustained most of the objections. It appears, however, from the record that the trial court and all the parties treated them as sufficient to raise there every question presented here, and that the case was tried on that theory. We shall therefore consider the assignments of error as raising properly in this court the matters set forth therein. Before discussing the separate assignments of error, it is well to state some of the general principles of law applicable to cases of this nature. The particular powers and duties of a trustee are regulated by the terms of the instrument creating the trust, and as to the performance of these duties the general requirements are that he represent and protect the interests of all the beneficiaries; that he act in good faith; and that he exercise that care and diligence which an ordinarily prudent man would exercise in the management of his own affairs.

In rendering an account, the burden is on the trustee to make a proper and satisfactory accounting of the funds coming into his hands, and, if he does not, every intendment is against him.

These rules are so elementary that they need no citations to support them. In determining whether the trustee has sustained the burden thus imposed on him, the general rules of law as to the admissibility, weight and sufficiency of the evidence, except as modified by statute, are applicable. 39 Cyc. 501. The trustee himself is a competent witness in all matters

concerning the estate. *In re Hodges' Estate,* 66 Vt. 70, 44 Am. St. Rep. 820, 28 Atl. 663; paragraphs 1006, 1055, Rev. Stats. Ariz. 1913 (Civ. Code).

It is also the rule on appeal that we will assume the trial court found every fact necessary to support its orders and judgment, and that every conflict in the testimony will be resolved in favor of such findings, actual or presumed. *First Baptist Church* v. *Connor,* 30 Ariz. 234, 245 Pac. 932; *Thomas* v. *Newcomb,* 26 Ariz. 47, 221 Pac. 226.

In discussing the assignments of error where, in our opinion, the principles of law applicable thereto are plain and undisputed, and the real argument is over the conclusions to be drawn from the evidence, we shall not, as a rule, discuss that evidence. The rule mentioned heretofore as to the conclusiveness of the determination, actual or presumptive, of the trial court governs, and it would be merely a waste of time and space to recite matters which could be of no value as a precedent in other cases.

With these principles before us as our guiding star, we take up the several assignments of error. It will be noted that the powers of the trustees under the will are about as broad as it is possible for the English language to make them, so far as handling the estate is concerned. It is difficult to imagine anything they could not have legally done with the *corpus* of the estate, subject only to the conditions that they must act in good faith for the benefit of the estate and account to it for the proceeds of their actions.

The first three assignments of error go to the sale of certain stock in the company to Paul Meyerhoff, R. P. Schuster and Max Schuster. The rule of law regarding these sales may be summed up as follows: If the sales were in good faith, for the benefit of the trust estate and reasonable in their terms, they will be sustained; otherwise they will not. It is urged it is unlawful for a trustee to sell property for an un-

secured obligation. Assuming without admitting this to be true, notwithstanding the terms of the trust herein, the only effect would be to make the trustee personally responsible for the value of the property sold. If he actually collected the purchase price, the original error would be immaterial. The other propositions of law stated by appellant on these assignments are true in the abstract, but depend for their applicability on the facts of the case. Without going into the evidence in detail, we think the trial court was justified in holding the sales were properly made and accounted for.

The fourth assignment goes to the sale of two shares of stock of the Security Trust & Savings Bank, with dividends thereon, to the company in 1922. It is urged that, since appellee absolutely dominated the company, a sale to it was in effect a sale to him, and that a trustee cannot buy from his *cestui que trust*. While there is authority to the contrary, we are of the opinion such a sale, especially in view of the provisions of the will, is not void, but voidable on a showing of bad faith. *Garden Development Co.* v. *Warren Ranch et al., ante,* p. 254, 276 Pac. 839; *Thayer* v. *Valley Bank, ante,* p. 238, 276 Pac. 526; *Heffern Co-op. etc. Co.* v. *Gauthier,* 22 Ariz. 67, 193 Pac. 1021. It appeared the other trustees made no objection, and the court charged the trustee with the full market value of the stock at the date of sale. This was not error.

The fifth, sixth, seventh and eighth assignments of error may be considered together. They go to the validity of the distribution of assets made to the children of deceased. It appears from the record that these distributions were made after each child had attained the age of twenty-two years; that thereafter the probate court was asked to approve each distribution, and on notice and hearing its approval was given, and

no appeal was ever taken from such order. Admitting for the sake of the argument only that the amount and kind of distribution was not what the heirs could have demanded, a *cestui que trust* of full legal age may accept any settlement he desires, and such settlement, when approved by the court having jurisdiction of the trust fund, is good against collateral attack. *Costello* v. *Cunningham,* 16 Ariz. 447, 147 Pac. 701; 39 Cyc. 505. The question of the remaining twenty-fourth not yet distributed to appellant was left open by the order of the trial court, and is not before us, except so far as it may be affected by our decision as to the total value of the trust fund. The other heirs, not having appealed, are of course not interested in the matter.

The eighth assignment is that the court erred in approving appellee's failure to pay any portion of the income of the estate to appellant, as provided by the will. It was admitted that no such payment had been made, and, unless it was waived by appellant, the assignment is well taken. The order made by the court recites "objection having been made by Arthur Schuster, Edward Schuster, Marguerite Schuster Ellison and Lloyd Schuster . . . that they had not been paid the income from said estate to which they were entitled under the terms of said will; and the trustee, Adolf Schuster, admitting that such income payments had not been made to said heirs as the will requires, but that all of said income had been paid to Mrs. Josephine Schuster, mother of said heirs; and the objectors above named, having in open court, by their counsel, Honorable J. E. Russell, announced that they waived this irregularity and withdrew their objections upon this ground, the court therefore orders that the payments of the income of said estate be approved as made, and set forth in said account and report." Appellant urges that no reference to the waiver described in the order appears in either the

reporter's transcript of evidence or the minutes of the court, and that, since these have been properly certified to by the reporter and judge as correct, we must assume the order is in error.

Even where there is an actual conflict between the clerk's minutes (much more the reporter's transcript) and the solemn, signed judgment of the court, the latter rather than the former should be given force and effect. *McFadden* v. *McFadden,* 22 Ariz. 246, 196 Pac. 452. Much more is this so when there is no actual conflict, but merely a silence in the former as to matter expressly set up in the latter. The waiver set forth in the order is a complete bar to any objection by appellant to the payment of the income to her mother instead of to herself.

The tenth assignment of error covers the allowance by the trial court of some eleven items of credit which we will deal with separately. The first is the sum of $83,914.98, income of the estate, which the trustee claims to have deposited with the company to the credit of Josephine Schuster. It is urged that, since the company was under the control of Adolf Schuster, a payment to it, though for the credit of Josephine Schuster, was in effect a payment to himself. Admitting this to be true, and that Mrs. Schuster would have the right to object, it seems to us the question is one of privilege on her part, and that appellant, in view of the waiver of income aforesaid, while she might contest the amount of the payment as affecting her distributive share remaining, cannot object on the ground it was paid to an improper party, that being a personal privilege of Mrs. Schuster. 2 Perry on Trusts, 5th ed., p. 643. There is ample evidence in the record to sustain the conclusion of the trial court that the amount allowed was actually paid. The next item is one of $10,438.53, alleged to be interest on the $11,500 note given for the El Cedro ranch properties. The question of the

validity of the alleged sale will be considered later. If it was properly made, the evidence sustains the approval of the trial court of the disposition of this item; otherwise, if it was not. The next item is an alleged deposit of $14,965.83, income of the estate, in the Security Trust & Savings Bank of Los Angeles. It appears from the record that appellant's counsel stipulated that this credit should be allowed as having been paid to Josephine Schuster or left to the credit of her account.

The next two items are for $3,409.55 and $2,581.37, which, it is claimed, have been improperly allowed twice. We have examined all portions of the abstract of record and reporter's transcript called to our attention by counsel, and are unable to find where there has been any such double credit.

The next two items of $3,926.10 and $2,052.97, paid to Arthur Schuster as part of his distributive portion of the estate, are objected to on the theory, as we understand the argument, that they were paid from income of the estate, instead of *corpus,* and that a double credit has been allowed the trustee therefor.

If there was no double charge, then, even though these sums were erroneously paid from income instead of principal, appellant would not be prejudiced thereby. Since she is entitled under the terms of the will to one-twelfth of the *corpus* of the estate, as well as one-twelfth of the income, the only effect a reversal of the error, if it was such, would have would be to cause the credit allowed to the trustee (since the money was unquestionably due Arthur Schuster) to be transferred to the *corpus* credit instead of the income, and, since appellant is entitled to the same proportion of both, it would merely diminish one source of future payment to her to the same extent the other is increased. If, however, the trustee was allowed a double credit—once for payment of the two amounts in question as income to Josephine

Schuster, and the other as payment of principal to Arthur Schuster, one of these credits should be disallowed. It appears the court allowed credit as a payment of income to Mrs. Josephine Schuster of $14,965.83 by deposit in various Los Angeles banks of that amount and payment to her of the same. This amount was arrived at by stipulation in open court, but we have not had pointed out to us the basis of such stipulation, and must assume it meant just what it says—that this was actually paid to her or credited to her account in some bank. We cannot assume, in the absence of proof to the contrary, that it included any moneys paid to Arthur Schuster. Such being the case, there was no double credit, and the allowance by the court of the amounts paid Arthur Schuster, even though the payments were made from income, was, at the most, technical error.

The next item was one for $1,670.20. The trustee presented no itemized statement of this and produced no receipts, claiming that the books of original record showing these items had been destroyed by fire, and that they represented funeral expenses and costs of administration. It appears from the decree of distribution the funeral expenses and costs of administration of the estate had been paid, and this item is the only credit asked therefor, and the amount claimed is not an unreasonable one. While ordinarily a trustee must make strict proof of the legality of disbursements claimed as credits, and present vouchers for the same, yet, when a reasonable explanation for the lack of vouchers is shown, their absence may be excused. Paragraphs 1006, 1007, Rev. Stats. Ariz. 1913 (Civ. Code). We cannot say that the excuse offered by the trustee for failure to give the items or produce the vouchers was not sufficient to justify the trial court in approving this credit.

The next item is an alleged assessment of $900 on the stock of the defunct Merchants & Stockgrowers

Bank. After all, the decision in regard to this, as well as most other contested points, must rest on the veracity of appellee, and the trial court evidently believed him, and on such a point its decision is final. The trustee testified positively to the payment, and the secretary of the bank also certified to it. We think this was sufficient.

The last two items under this assignment are one for $26.50 for expenses of a trip made by the trustee and $2.14 for "changing stock certificates." The evidence on these points was sufficient.

The next two assignments deal with the failure of the trustee to account for certain interest on deposits made to the credit of Josephine Schuster. This was a matter which could not be raised by appellant, since it concerned Josephine Schuster in her individual capacity only.

The next assignment refers to the alleged sale to the company of the El Cedro ranch properties, immediately after the death of Benjamin Schuster. That the trustees, acting as such or as executors, had ample authority under the will to make such a sale, cannot be questioned. But it is argued that such a sale was never actually made, and, even if it was, the terms were unfair. It is unnecessary for us to analyze the evidence in regard to the transaction. It is, like much of the rest of the testimony on other points, somewhat vague, and in some points rather unsatisfactory. We must remember, however, that it covers a period some fifteen years in the past, and that it is not strange the parties cannot remember all the details of the business. It is urged that the purported sale took place before the probate of the will, and is thus illegal. The better rule is that a subsequent probate validates the prior acts of the executor, if the only objection is that they were premature. *In re Murray's Estate,* 56 Or. 132, 107 Pac. 19; *Allison* v. *Cocke's Exr.,* 106 Ky. 763, 51 S. W. 593; 23 Cyc. 1181.

The next assignment is that the court improperly allowed certain stock dividends of the Security Trust & Savings Bank as principal and not as income. We cannot see wherein appellant is prejudiced by the action of the court. If the stock be principal, she will doubtless be given credit therefor on the final division of the *corpus* of the estate. Had it been income, it would have been distributed to Josephine Schuster, and appellant would have lost all right thereto. There being no prejudice, the error, if any, was harmless.

The last assignment of error is that the court should not have allowed compensation or attorney's fees to appellee. This is predicated on the theory that the trustee has violated the conditions of his trust, and damaged, rather than benefited, the estate, and so cannot claim either compensation or attorney's fees. The rule of law suggested by appellant is correct, but do the facts of the case fit the rule?

On reviewing the whole evidence, the trial court must have found, in order to support its order approving the account, that appellee had on the whole acted in good faith and in accordance with the law, and that his acts were for the benefit of the trust estate, and of some considerable value, and that his employment of attorneys in this case was justifiable. Did the court abuse its discretion in so finding?

The case was carefully tried in the lower court and exhaustively briefed and argued in this court by able counsel. The record is long and complicated, and in some places rather obscure. Nevertheless therefrom we have been strongly impressed with an opinion as to the general outlines of the true situation.

There is no doubt in our minds that the relation of trust and confidence existing between Benjamin Schuster and Adolf Schuster went far beyond the ordinary affection of brothers. It had lasted for many years, and, when the former found that tie

about to be severed by death, his first and last thought was that no one could and would so well care for the temporal interests of the wife and children he left behind as the brother who had for so many years worked in harmony with him. So believing, he executed a will giving to that brother almost unlimited powers, for he must have known that his wife was utterly incompetent to handle large business affairs, and would necessarily have to be guided by the advice of his brother. No bond was required of appellee; nay, he was expressly, so far as the statutes would permit, exempted from any accounting of his trust to the courts of probate.

It is, of course, true that, had appellee been well versed in the law, he would have known that notwithstanding, and perhaps even on account of, that great trust, it was incumbent on him to be particularly careful in the handling of the estate and keeping of accounts thereof, so that at a later date, should his conduct ever be called in question, he would have a complete and contemporaneous written explanation of every act. But, in judging the conduct of appellee, we must bear in mind that he was a layman and not a lawyer, that he knew of the confidence his brother for many years had in him, and that he had been accustomed to handling all the details of what had now become in part a trust estate with no guidance or check except the hand now stilled by death. And the trial judge, in passing on the credibility of the witnesses, and the conduct of appellee, could rightly consider these facts.

What, then, does the evidence disclose as to how the estate was handled? Generally speaking, an estate which had originally inventoried but $117,000 had during sixteen years paid in actual dividends to the beneficiaries over $135,000, and is at the present time of a value of at least $129,000, a net income of about eight per cent per annum, to say nothing of the in-

creased value of the *corpus*. The larger part of the dividends came from a business whose success was almost entirely dependent on the personal exertions of appellee, yet until the final account he had made no charge for compensation for himself, or attorney's fees or expenses of any nature. The ordinary man would be well satisfied to think his estate would be as carefully handled after his death.

Appellant presents no evidence showing any fraud or illegitimate profit made by appellee at the expense of the trust estate, but apparently relies on the principle that a trustee is held to a strict accounting of his trust, and that every presumption is against him, the burden being on him to prove good faith and a correct accounting. The rule of law just stated is undoubtedly correct, but appellant misapprehends the *quantum* of proof necessary to sustain the burden thrown on the trustee. In the case at bar we are of the opinion that such burden was sustained at least to the extent of authorizing the trial court to make the order which it did, and, such being the case, its decision must stand. Order affirmed.

McALISTER and ROSS, JJ., concur.