## HUNT *v.* RABITOAY.

LIFE TENANT — PURCHASE OF HOSTILE CLAIMS — DECEDENT'S ESTATE — ALLOWANCE OF CLAIMS — EFFECT — PARTITION — VALIDITY — DEED OF INSANE GRANTOR.

*1. A life tenant cannot purchase hostile claims to set up in opposition to the original title during his life tenancy.

2. The allowance of claims against the estate of a deceased person conveys no title to the land which may be sold to pay debts.

3. Certain recitals in deeds, long possession and occupation, the making of improvements, the sales of land, and an acquiescence for more than 50 years, afford sufficient proof of an actual partition by deed or by proceedings in the probate court.

* Head-notes by GRANT, J.

4. Partition of lands by guardians of infants and incompetents will be sustained, where the partition is fair and equal.

5. Only privies in blood or the legal representatives of a deceased party can avoid the deed of an insane grantor.

Appeal from Wayne; Carpenter, J. Submitted April 13, 1900. Decided November 13, 1900.

Bill by Eleanor C. Hunt and others against Frank Rabitoay and others for a partition. From a decree dismissing the bill, complainants appeal. Affirmed.

Complainants seek partition of a part of private land claim 121, situated in the township of Ecorse, Wayne county, containing 55 acres. The entire claim contains 250 acres, was a long, narrow strip fronting on the Detroit river, and was divided by a stream, between which and the river were about 60 acres. This stream was a fork of the river Ecorse. Andre Viger was the original patentee of this claim. He died in 1812, leaving two daughters, Marie and Marie Louise. The record does not show the dates of their birth, but an old probate record of April 3, 1820, recites that the "two girls are now of age." Marie Louise was *non compos mentis*. August 25, 1825, one John L. Castignett was appointed her guardian. The other daughter, Marie, had been married to one Bartin. On August 27, 1825, Mrs. Bartin and her husband conveyed by deed all that part of said claim lying between the Detroit river and the fork of the river Ecorse to one Jean Baptiste Massicot, which deed was duly recorded May 30, 1833. Massicot gave three mortgages upon this land, dated, respectively, July, 1828, September, 1830, and February, 1835. They purported to convey the entire land. On May 13, 1835, Massicot conveyed the land by deed to Jean Baptiste Vermitte, which deed also assumed to convey the entire land. On October 7, 1835, Vermitte conveyed the land by deed to Jean B. Bondie. This deed recited that "said tract of land was confirmed unto Andre Viger, and from said Viger confirmed unto Jean

Bâptiste Massicot by Louis Castignett, Jacques Bartin, and Mary Bartin, wife of said Bartin, and heirs of said Andre Viger, deceased." Bondie took possession of the land, and lived thereon until his death, October 4, 1859. He erected a house upon it, and paid the taxes. He sold at various times four small parcels, conveying the same by warranty deed. Two of these parcels were sold to George Clark, the ancestor of complainants, under whom they claim.

Jean B. Bondie died testate October 4, 1859, seised of the remainder of the land thus conveyed to him, and which is the land in dispute. By his will Jean Baptiste Bondie devised this same land to his son Alexander for life, with remainder over to the children of said Alexander, and the children of his two daughters, their heirs and assigns. On September 11, 1865, Alexander, by an instrument in form a lease, conveyed the premises to said George Clark in consideration of $400, and the lessee's promise to pay all taxes then or thereafter levied against the land, to keep the premises in good repair, and to surrender the same at the expiration of the lease, namely, at the death of Alexander, to his heirs, representatives, and assigns, in good repair. By this instrument Clark became the purchaser of the life estate of Alexander. Clark went into possession under this lease, which was never surrendered or terminated. Clark died intestate October 14, 1877. Complainants (his heirs at law) succeeded to his rights, held and occupied the land, and were in possession at the time this suit was brought. The defendants are the grandchildren of Jean Baptiste Bondie, or their grantees, and are the remainder-men entitled to the land after the falling in of Alexander Bondie's estate. Alexander Bondie was living when this suit was brought, heard, and decided in the court below. He died in November, 1899, after the case was appealed to this court.

On September 16, 1833, one Joseph Piatt was appointed guardian of Marie Louise. On April 16, 1836, he applied to the probate court for authority to sell a certain portion

of the land formerly belonging to Andre Viger, lying in the rear of the land in dispute. This petition recited that "said Andre died seised and possessed of 360 acres of land, which one-half of said land descended unto the said Marie Louise Viger, and the other half unto Marie Viger, wife of Jacques Bartin, which was subsequently divided amicably by and among the heirs of said Andre, deceased." This land was sold under an order of the court, June 27, 1836, to Laurent Drouillard for $495, which sale was confirmed. Drouillard on the same day conveyed the same land to the guardian, Piatt, for $500. In 1825 or 1826, Marie Bartin conveyed to Peter Godfroy, who was the administrator of her father's estate, all of her right and title to the land fronting on Ecorse creek. This deed does not include the land in dispute, but included the 180 acres in the rear of it. This deed was recorded December 20, 1826. On March 10, 1830, she made another deed, conveying one-half of this rear 180 acres, in which it was recited that the land had been amicably divided between the heirs of said Andre. On June 24, 1833, Godfroy deeded this land conveyed to him by Marie Bartin to Piatt, the guardian of Marie Louise. This deed also recited an amicable partition of the land by the heirs. The consideration expressed in the deeds from Mrs. Bartin to Godfroy was only $60.

Piatt lived on this rear 180 acres until his death, which occurred some time between the years 1854 and 1862. Marie Louise, his ward, lived with and was supported by him. Mr. Piatt stated that he "had that property for taking care of the girl Louise Viger." On February 18, 1854, Joseph Piatt and his wife, Monique, conveyed to their son Francis the entire south 60 acres of said north 180 acres, in which it was recited, "and the said Francis, his heirs, executors, and administrators, will maintain Marie Louise Viger, if she is the survivor of the said Joseph and Monique aforesaid." On December 7, 1862, Francis Piatt conveyed the land to one Joseph Dubo, and in this deed the land was incumbered with the duty on

the part of Dubo to maintain Marie Louise Viger, if she should be the survivor of the said Monique Piatt. Marie Louise died November 16, 1868. An administrator was appointed upon her estate. The administrator inventoried a half interest in the land in dispute as belonging to the estate. Some claims were allowed, of which Clark took an assignment, and a quitclaim deed from the claimants of their supposed interest in the land. It being represented that Marie Louise died without heirs, and that her property, therefore, escheated to the State, the proper State officers executed a deed to Rebecca Jane Clark, who was the widow of George Clark, of the interest of the State in the land, for a nominal consideration. Thereupon the complainants in this case, and others, filed a bill in chancery against the unknown heirs of Marie Louise Viger to quiet their title. None of the defendants in this suit were made parties to that suit. A decree was rendered in accordance with the prayer of the bill. This cause was heard upon pleadings and proofs, and a decree entered dismissing complainants' bill.

*Bethune Duffield* (*John D. Conely*, of counsel), for complainants.

*John W. Beaumont* and *Eugene S. Clarkson*, for defendants.

GRANT, J. (*after stating the facts*). 1. The court below entered a decree dismissing the bill, for the reason that complainants could not, during the lifetime of Mr. Bondie, the life tenant, purchase hostile claims and set them up in opposition to the title of the life tenant. Mr. Clark during his life, and complainants since his death, were in possession of the entire property as owners only of the life estate. They stand in the same position as did Alexander Bondie, and have no more right than he possessed. Their relation is so nearly that of landlord and tenant that the complainants cannot be heard to dispute the title of the life tenant. *Board* v. *Board*, L. R. 9 Q.

B. 48; *Caufman* v. *Presbyterian Congregation*, 6 Bin. 59.

Mr. Clark could purchase outstanding titles to set up against the title of the remainder-men upon the termination of the life tenancy. *Clark* v. *Adie*, 2 App. Cas. 435; *Robertson* v. *Pickrell*, 109 U. S. 608 (3 Sup. Ct. 407); *Fuller* v. *Sweet*, 30 Mich. 239 (18 Am. Rep. 122).

It would be unnecessary, therefore, to discuss other questions in the case, were it not for a stipulation filed in this court by the solicitors for the respective parties that the case might be heard here as though commenced after the death of Alexander Bondie. This stipulation, however, makes it necessary to dispose of the case upon other grounds.

2. Complainants have no title except by deed from the State as escheated land. The administration of the estate of Marie Louise was settled and final account allowed, the land was not sold, and by the administrator no proceedings were taken to sell. The allowance of claims against an estate conveys no title to the land which may be sold to pay debts, and the deeds, made by the owners of claims against the estate, were worthless to convey title.

Two questions are presented for determination: (1) Was there an amicable partition of these lands by deed or by parol? (2) If such partition was made, was it valid as against Marie Louise, an incompetent? A third question is also raised, viz.: If the partition was by parol, is it valid?

Our statute was adopted from that of New York, and before its adoption here the question was decided in *Jackson* v. *Harder*, 4 Johns. 202 (4 Am. Dec. 262), in which a parol partition was held valid. See, also, *Jackson* v. *Vosburgh*, 9 Johns. 270 (6 Am. Dec. 276). We, however, deem it unnecessary to decide this question.

We think the recitals in the deeds above mentioned, the possession and occupation of the land by each, and the improvements made thereon for a long series of years, and the sale of a portion of the land north of Ecorse creek as

belonging to Marie Louise, and the sale of four parcels by Jean B. Bondie, furnish sufficient proof, after so long a period, that there was an actual partition of the land by deed or by proceedings in the probate court, which have been lost and were not recorded. The recitals in these old deeds and the conduct of the parties are consistent only with an actual partition. After the expiration of 60 years, it is a just conclusion, under the record in this case, that there was a legal partition.

It is urged by complainants that the partition, if one was made, was of the land north of the Ecorse river, and not of the land in dispute, which lay south of it. Without setting out more fully the testimony in detail, we are satisfied that this is not the correct conclusion to be deduced from the facts. There is no testimony in the record to indicate that Mrs. Bartin or her grantees ever made any claim to any portion of the land north of the creek after the partition. On the contrary, as already shown, Mrs. Bartin and her grantees treated the land in dispute as their own, and the guardians of Marie Louise acquiesced. It is also apparent that the land north of the creek was treated as belonging to Marie Louise.

3. We think partition of lands by the guardians of infants and incompetents is fully sustained by the authorities as well as by reason. Either co-tenant could compel a partition. What may be compelled by the law parties should be allowed to accomplish amicably, so long as no advantage is taken and the partition is equal. Freem. Co-Ten. §§ 414, 415; 2 Co. Litt. §§ 243, 258; *Williard* v. *Williard,* 56 Pa. St. 119; *Brooks* v. *Hubble,* (Va.) 27 S. E. 585. The territorial law then in force authorized the guardian "to divide the real estate in as full and ample a manner as the idiot, lunatic, *non compos* or distracted person might or could were they restored to the full use of their rational faculties." 1 Terr. Laws, 377. Whatever may be the interpretation of this statute, it certainly evidences an intent to repose a broad power in the guardian.

There is no evidence in this case to show that this partition was an unequal one. If, however, it were unequal, these complainants are not in position to raise that question and to avoid it. They are neither privies in blood nor are they the legal representatives of Marie Louise Viger, and only these two classes can avoid the deed of an insane grantor. They simply hold as purchasers of escheated lands. 1 Jones, Real Prop. § 64; *Hunt* v. *Weir*, 4 Dana, 347; *Beverley's Case*, 4 Coke, 123*b*; *Breckenridge's Heirs* v. *Ormsby*, 1 J. J. Marsh. 236 (19 Am. Dec. 71).

Decree is affirmed.

The other Justices concurred.