657 P.2d 427

In the Matter of the ESTATE OF Harriet K. NELSON.

Gordon G. WATERFALL, Personal Representative of the Estate of Kenneth R. Nelson, deceased, Petitioner/Appellant.

v.

ARIZONA BANK, Conservator of the Estate of Harriet K. Nelson, a Protected Person, Respondent/Appellee.

No. 2 CA–CIV 4351.

Court of Appeals of Arizona, Division 2.

Oct. 12, 1982.

Rehearing Denied Dec. 20, 1982.

Waterfall, Economidis, Caldwell & Hanshaw, P.C. by Steven M. Cox, Tucson, for petitioner/appellant.

Molloy, Jones, Donahue, Trachta, Childers & Mallamo, P.C. by Paul D. Slosser and Earl Daniels III, Tucson, for respondent/appellee.

## OPINION

HATHAWAY, Judge.

Harriet K. Nelson, a protected person, and her husband, Dr. Kenneth R. Nelson, now deceased, held certain securities and accounts in joint tenancy with the right of survivorship. Before his death and after having petitioned for letters of conservatorship of his wife's estate, Dr. Nelson transferred the jointly held securities and accounts to his separate name. Some of the transfers were made after his letters of conservatorship had issued. Arizona Bank, successor conservator of Harriet's estate after Dr. Nelson died, brought an action for a declaration by the court that the securities and funds held by Dr. Nelson at his death remained joint tenancy property with right of survivorship and thereafter belonged to Harriet as the surviving joint tenant. This appeal challenges the trial court's granting the conservator's motion for summary judgment. We reverse and remand for further proceedings.

Kenneth and Harriet were married in 1928. Kenneth received his Doctor of Medicine degree in 1929 and pursued a career in the public health service during which time he was stationed throughout the United States. The Nelsons had one child by their marriage, Kenneth R. Nelson, Jr. Kenneth Jr. had one child, Carolyn Nelson, born October 16, 1957. Kenneth Jr. predeceased his parents and Carolyn is their sole living descendant. In October 1977, the Nelsons had prepared wills leaving their respective estates to each other, and if neither survived, then to their son Kenneth, and in the event of his death, to their grandchild.

Harriet fell into poor health in June 1978 and Dr. Nelson employed Mona Camilla, a licensed practical nurse, to help care for her. In August of 1978, it became necessary to transfer Harriet to a convalescent home, where she still resides.

Kenneth Jr. died on February 5, 1980. Shortly thereafter, Dr. Nelson consulted with his attorney for estate planning. He advised counsel that neither he nor his wife wished their grandchild to receive anything from their estates because she had alienated herself from them. With the exception of household and personal items, most of their property was held in joint tenancy with the right of survivorship. Harriet had become totally incapacitated and was unable to change her will and if Dr. Nelson should predecease his wife, the entire estate would pass to her and upon her death to Carolyn under Harriet's will.

Thereafter Dr. Nelson terminated the joint tenancy status of the Nelson residence by deed and allocated a one-half interest each to Harriet and to himself. All of the stocks and bonds held by the parties in a brokerage account number KH86851–40 at Paine Webber, Jackson and Curtis, Inc. valued at between $25,000 and $30,000, were placed in Kenneth's name as was a savings account number 577540 735–0 at Alameda Coast Guard Credit Union in Oakland, California, and a motor vehicle valued at $3,000. From the credit union savings account Kenneth transferred to Harriet $8,000, and the balance of approximately $17,000 was placed in his name.

Dr. Nelson's petition for letters of conservatorship was filed on March 16, 1980. He was appointed guardian and conservator on May 13, and letters of conservatorship were issued on May 16, 1980. The Alameda Coast Guard Credit Union savings account was terminated in April 1980, after the petition for conservatorship was filed, but prior to appointment. Joint tenancy in the

securities was terminated after Dr. Nelson's appointment and acceptance of the conservatorship.

Dr. Nelson executed a last will and testament on March 14, 1980, which was admitted to probate after his death on March 1, 1981. Under the will, a lifetime trust was created for Harriet which provides for distribution to Harriet of all of the income and discretionary distribution of principal for her support. Upon her death, the remainder of the estate is to be distributed 15% to her sister and 85% to Mona Camilla. Upon its substitution as conservator for Harriet's estate after Kenneth's death, the Arizona Bank obtained the summary judgment invalidating the transfers by Kenneth from the joint accounts for noncompliance with A.R.S. § 14-5422.

It is the appellant-personal representative's position on appeal that the trial court's declaration that the securities and funds in question remained joint tenancy property with right of survivorship, and thereafter belonged to Harriet as the surviving joint tenant, was clearly erroneous. Appellee's position is that without court approval the joint tenancies could not be terminated.

The controlling statute, A.R.S. § 14-5422, provides:

"Any sale or encumbrance to a conservator, his spouse, agent or attorney, or any corporation or trust in which he has a substantial beneficial interest, or any transaction which is affected by a substantial conflict of interest is voidable unless the transaction is approved by the court after notice to interested persons and others as directed by the court."

The parties agree that the statute requires that the transaction be "affected by a substantial conflict of interest" for court intervention. Additionally, it is agreed that upon such a finding the transaction is "voidable" and not necessarily "void."

■ A.R.S. § 14-5422 does not by its terms require advance court approval of a transaction. See *Matter of Estate of Stephens,* 117 Ariz. 579, 574 P.2d 67 (App.1978), which supports the proposition that post-transaction approval is sufficient. Violation of the fiduciary duty does not ipso facto follow from a fiduciary in Dr. Nelson's position terminating joint tenancy accounts. Flexibility and convenience in the management and handling of joint accounts is, of course, a primary reason for their use. A joint tenancy account holder is ordinarily entitled to withdraw from the joint account funds in proportion to his contribution. A.R.S. § 14-6101(6) and 6103.[1]

These statutes present an issue of tracing assets, unless clear and convincing evidence of another intent is shown. Nothing of the sort was presented and these factual issues remain to be determined.

■ Likewise, termination of the brokerage account is not forbidden by statute. Jurisdictions addressing the question have held that a conservator may partition such property if the division is fair and reasona-

1. "§ 14-6101. Definitions

\* \* \* \* \* \*

6. 'Net contribution' of a party to a joint account as of any given time is the sum of all deposits thereto made by or for him, less all withdrawals made by or for him which have not been paid to or applied to the use of any other party, plus a pro rata share of any interest or dividends included in the current balance."

"§ 14-6103. Ownership during lifetime

A. A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent.

B. A P.O.D. account belongs to the original payee during his lifetime and not the P.O.D. payee or payees. If two or more parties are named as original payees, during their lifetimes rights as between them are governed by subsection A.

C. Unless a contrary intent is manifested by the terms of the account or the deposit agreement or there is other clear and convincing evidence of an irrevocable trust, a trust account belongs beneficially to the trustee during his lifetime, and if two or more parties are named as trustee on the account, during their lifetimes beneficial rights as between them are governed by subsection A. If there is an irrevocable trust, the account belongs beneficially to the beneficiary."

**442**

ble. *Hunt v. Rabitoay,* 125 Mich. 137, 84 N.W. 59 (1900); *Bennett v. Arrowsmith,* 101 Kan. 143, 165 P. 812 (1917). To determine whether Dr. Nelson fulfilled the good faith demanded from a conservator for his ward, *Bell v. Bell,* 44 Ariz. 520, 39 P.2d 629 (1934), and A.R.S. § 14–5417, required a hearing for the presentation and consideration of the evidence to enable the trial court to evaluate and determine whether the partition of joint tenancies was fair and reasonable.

■ It appears undisputed that Dr. Nelson's contribution to the joint accounts was significant. Accordingly, he retained commensurate withdrawal rights. Whether he went beyond those rights must be decided. Cases cited by appellee dealing with noncontributing joint account holders are not particularly helpful. In such instances, a noncontributing joint account holder, occupying the position for the convenience of the beneficial owner, has no personal beneficial interest in the account, and breaches his fiduciary duty when he misappropriates such funds. The statutes previously adverted to, and in particular A.R.S. § 14–6103(A), established the interests of the joint account holders. We agree with the Kansas Court of Appeals dealing with a guardian who was a joint tenant with his ward. In *Fielder v. Howell,* 6 Kan.App.2d 565, 631 P.2d 249, 251 (1981), the court stated:

> "Appellee has urged this court to adopt a strict rule concerning the exercise of fiduciary powers. However, when the estate of the ward is in no way diminished and the apparent conflict of interest does not manifest itself by controlling the guardian's actions, it would seem unduly harsh to make an example of a loyal fiduciary because of a potential, yet unrealized, conflict. We therefore hold that a case-by-case approach must be taken in alleged conflict of interest circumstances to determine whether the beneficiary of the trust is actually harmed or the trustee is rewarded by the dual interests. We conclude that because the conservator is able to trace the proceeds received

from cashing the certificate of deposit and the estate was in no way diminished, the conservator is entitled to the money as a surviving joint tenant despite the alleged breach of fiduciary obligation."

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

HOWARD, C.J., and THOMAS G. MEEHAN, Superior Court Judge, concur.

NOTE: Judge BEN C. BIRDSALL, having recused himself from consideration of this matter, Judge THOMAS G. MEEHAN was called to sit in his stead and participate in the determination of this decision.