**In re David R. JOHNS, Debtor.**

**Richard JOHNS, Plaintiff,**

v.

**David R. JOHNS, Defendant.**

**Bankruptcy No. 92–02953–PHX–SSC.
Adv. No. 92–680.**

United States Bankruptcy Court,
D. Arizona.

April 11, 1995.

Gregory W. Falls, Daniel W. McCarthy, Mohr, Hackett, Pederson, Blakley, Randolph & Haga, P.C., Phoenix, AZ, for plaintiff.

Michael W. Carmel, Michael W. Carmel, Ltd., Phoenix, AZ, for debtor.

## MEMORANDUM DECISION

SARAH SHARER CURLEY, Bankruptcy Judge.

### Preliminary Statement

On June 22, 1992, a Complaint To Determine Dischargeability Of Debt pursuant to 11 U.S.C. § 523 was filed by RICHARD JOHNS, the Plaintiff herein. The Defendant/Debtor filed an Answer on October 22, 1992. The parties subsequently engaged in pretrial proceedings and on April 9, 1993, the parties filed a Joint Pretrial Order. The Court requested certain amendments thereto. On May 14, 1993, the parties filed an Amended Joint Pretrial Order. On September 22, 1993, the Amended Joint Pretrial Order was further amended by a stipulation. Finally, on October 12, 1993, the parties filed a Second Amended Joint Pretrial Order.

On July 14, 1993, the Plaintiff filed a Trial Memorandum Regarding Gifts To Minors Under Arizona Law And The Elements Of Non–Dischargeability Under 11 U.S.C. § 523(a)(4) or (6) and a Trial Memorandum Regarding Damages. On July 21, 1993, the Defendant filed his Trial Memorandum. The trial was continued on several occasions until March 31, 1994, when evidence was presented to the Court. The Court subsequently took the matter under advisement.

This constitutes this Court's findings of fact and conclusions of law pursuant to Rule 7052, *Rules of Bankruptcy Procedure* (hereinafter "RBP"). This is a "core" proceeding and this Court has jurisdiction over this matter. 28 U.S.C. §§ 1334 and 157.

### Factual History

Prior to the divorce of DAVID R. JOHNS, the Defendant/Debtor, and DALE JOHNS, his former wife, the Debtor established certain accounts for the benefit of DAVID RICHARD JOHNS, their son, (hereinafter "Plaintiff") at Valley National Bank.

Subsequent to the divorce, the Debtor established other accounts at Valley National Bank. The Debtor was responsible for the maintenance and management of these accounts. Many of the accounts were established as certificates of deposit. Periodically, the Debtor withdrew money from the savings account and purchased additional certificates of deposit for the benefit of the Plaintiff. Eventually, the Debtor withdrew all of the funds from the accounts and utilized the funds to pay his personal living expenses and attorneys' fees.

The Debtor filed a voluntary Chapter 11 petition on March 11, 1992.

In determining whether the Debtor held the accounts in some type of a fiduciary capacity, the Court must first review the divorce decree. The parties agreed at the time of trial that the Plaintiff's Exhibit No. 42 was a true and correct copy of the judgment and decree of dissolution of marriage ("Decree"). The Decree states in relevant part:

*24. Children's Investments*

The parties serve as trustees for their minor children, ... David Richard Johns, in connection with the following-described certificates of deposit and savings accounts with Valley National Bank and agree to continue to serve in such capacity and to cause such funds to be used solely for the benefit of such children:

\*   \*   \*   \*   \*   \*

*Certificates of Deposit Held For David Richard Johns at The Valley National Bank of Arizona*

| Amount | Cert. # | Acct. # |
|--------|---------|---------|
| $6,000 | 2056370 | 84718422 |
| $3,000 | 0030160 | 84049871 |
| $3,000 | 0111836 | 84338972 |

\*   \*   \*   \*   \*   \*

*Savings Account Held For David Richard Johns*

Litchfield Park Branch of The Valley National Bank of Arizona Acct. # 34422121, with balance as of April 1, 1982 of $4,168.86.[1]

To reflect further the nature of these accounts; that is, that the Debtor was to serve as a trustee, several of the accounts were captioned as follows:

David Richard Johns By David R. Johns as Custodian Under Arizona Uniform Gifts to Minors Act.

Specifically, the certificates of deposit designated Account Numbers 8404–9871 and 8433–8972 were so captioned.[2] Moreover, for the taxable years 1985, 1986, 1987, 1988, 1991 and 1992, the Plaintiff paid taxes on any interest earned on the certificates of deposit or the savings account.[3]

The next task is to trace, if possible, what happened to these accounts created under the Decree.

### I. *Account No. 8471–8422*

At the time of the Decree, this account had $6,000 in it. The Debtor was to serve as a trustee for this account. It appears the sum of $6,000 was withdrawn from this account in February, 1989. These funds were not utilized for the benefit of the Plaintiff. The sum of $2,000 was deposited into the account in March of 1989 and the account was closed, with a $2,000 withdrawal on December 17, 1990. The funds withdrawn were not utilized for the benefit of the Plaintiff.[4] The Debtor has failed to present any accounting as to what happened to these funds. The Debtor did testify that the funds were used generally to assist the Debtor with financial problems that the Debtor was experiencing.

### II. *Account No. 8404–9871*

This account was also mentioned in the Decree. Not only was the Debtor to serve as a trustee for this account, but it was conceded in the Joint Pretrial Order, and one of the trial exhibits so reflected, that the account was created under the *Arizona Uniform Gifts to Minors Act.*[5] This account originally had $3,000 in it, no deposits were made in the account, and the account was closed on November 23, 1990.[6] The Debtor had no explanation as to what happened to these funds other than the Debtor used same to pay certain debts that he had incurred.

### III. *Account No. 8433–8972*

This account was also denominated in the Decree as an account for which the Debtor was to serve as a trustee. Although not conceded by the Debtor, one of the Plaintiff's exhibits reflected that this account was established under the *Arizona Uniform Gifts*

---

1. See Plaintiff's Exhibit No. 42, pp. 18–19.

2. See Plaintiff's Exhibit No. 26.

3. See Plaintiff's Exhibit Nos. 9–14 and 27–32.

4. See Plaintiff's Exhibit Nos. 4 and 44.

5. See Joint Pretrial Order, pp. 3–4 and Plaintiff's Exhibit No. 26.

6. See Plaintiff's Exhibit Nos. 4 and 44.

*to Minors Act.*[7] This particular account was evidenced by a certificate of deposit which matured on December 5, 1985.[8] All of the funds were then placed in Account No. 8265–3493.[9] Account No. 8265–3493 was closed on November 23, 1990 by the withdrawal of $3,000.[10] Although the Debtor was the trustee and these accounts had been established under the *Arizona Uniform Gifts to Minors Act,* or constituted the proceeds of such an account, the funds in the certificates of deposit were utilized by the Debtor for his personal living expenses or to pay certain loans in full.

### IV. *Savings Account No. 3442–2121*

This savings account was also established under the Decree and the Debtor was to serve as trustee therefor. Interest on the various certificates of deposits described above were placed in this account. The Debtor also made additional deposits into this account. On February 27, 1987, the sum of $9,000 was taken from this account and placed in a Certificate of Deposit Account No. 8571–9822, which certificate of deposit was established under the *Arizona Uniform Gifts to Minors Act.*[11] Certificate of Deposit Account No. 8571–9822 was closed on January 3, 1991 [12] and the entire $9,000 in the certificate of deposit at that time was utilized solely by the Debtor for his benefit. On August 20, 1990, the additional sum of $9,000 was taken from the savings account and placed in a Certificate of Deposit Account No. 8006–4724.[13] On March 7, 1991, Certificate of Deposit Account No. 8006–4724 was closed [14] and the entire sum of $9,000 was utilized by the Debtor to pay his personal living expenses or to make payment on his loans. The one other withdrawal from the savings account was on February 9, 1989 in the amount of $2,000,[15] which sum was utilized, the Debtor believes, to purchase a car for the Plaintiff.

### V. *Account No. 8459–8061*

This account was not mentioned in the Decree. However, the Debtor conceded in the Joint Pretrial Order that the account was created under the *Arizona Uniform Gifts to Minors Act.*[16] This account had $5,892.74 in it when it was opened and when it was closed on May 8, 1991.[17]

### VI. *Account No. 8947–2185*

This account was not mentioned in the Decree. However, the Court concludes that this certificate of deposit was established as a result of a withdrawal of $5,000 from the savings account on February 28, 1989, of which the sum of $3,000 was utilized to open this certificate of deposit.[18] The funds in Account No. 8947–2185 were withdrawn by the Debtor on December 17, 1990 [19] and utilized solely by the Debtor.

### VII. *Conditional Use of Funds*

At trial, the Debtor explained that he had placed certain conditions on the Plaintiff's utilization of funds in any of the accounts. The Debtor testified that the funds were to be utilized for the specific purpose of a college education for the Plaintiff. Since the Plaintiff did not fulfill this condition, the Debtor felt entitled to use the funds for whatever personal living expenses or loans that the Debtor had incurred. The Court notes that the Debtor's testimony concerning the specific use of the funds for a college education was controverted by evidence clearly showing that the Debtor withdrew funds from one of the accounts to assist the Plaintiff in purchasing a car. In any event,

---

7. See Plaintiff's Exhibit No. 26.

8. See Plaintiff's Exhibit No. 42, p. 19.

9. See Plaintiff's Exhibit No. 3.

10. See Plaintiff's Exhibit No. 4.

11. See Plaintiff's Exhibit Nos. 1, 8 and 44.

12. See Plaintiff's Exhibit No. 8.

13. See Plaintiff's Exhibit No. 7.

14. *Id.*

15. See Plaintiff's Exhibit No. 1.

16. See Joint Pretrial Order, pp. 3–4.

17. See Plaintiff's Exhibit Nos. 2 and 6.

18. See Plaintiff's Exhibit No. 4 for the withdrawal from the savings account and the deposit of funds into the certificate of deposit.

19. See Plaintiff's Exhibit Nos. 4 and 44.

for the reasons set forth hereinafter the Debtor is liable to the Plaintiff and the so-called conditions placed on the funds by the Debtor do not affect the outcome.

### Legal Issues

The parties have framed the issue broadly as:

Whether The Debtor's Utilization Of The Funds In The Various Accounts Constituted Fraud, Breach Of Fiduciary Duty Or Defalcation, So That The Debt To The Plaintiff Would Be Deemed Nondischargeable Under 11 U.S.C. §§ 523(a)(4) Or (a)(6).

The Court need not address the issues presented pursuant to Section 523(a)(6) for the reasons discussed at the end of this Memorandum Decision. As to the issues under Section 523(a)(4), the Court has framed them as various subissues to state more accurately the controversy between the parties.

I.   Whether The Debtor Agreed To Serve As A Trustee Creating A Fiduciary Relationship As To Those Accounts In The Decree.

II.  Whether The Transfer Of Funds From The Accounts Created Under The Decree Released The Debtor From His Duties As A Trustee.

III. Whether The Debtor Had Independent Duties And Responsibilities To The Plaintiff Under The Arizona Uniform Gifts To Minors Act Or The Subsequent Law Concerning Gifts To Minors.

IV.  Whether The Transfer Of Funds From the Accounts Established Under The Arizona Uniform Gifts To Minor Act Or Subsequent Law Concerning Gifts To Minors Relieved The Debtor Of The Duties And Responsibilities Of A Fiduciary.

V.   Whether The Debtor Is Liable To The Plaintiff For A Defalcation While Acting As A Fiduciary.

█ A review of Ninth Circuit law reflects that although the concept of "fiduciary" under 11 U.S.C. § 523(a)(4) is a narrowly defined term under federal law, the Court should consider applicable state law to determine whether express or technical trust relationships exist. *Ragsdale v. Haller*, 780 F.2d 794 (9th Cir.1986); *In re Schneider*, 99 B.R. 974, 976 (9th Cir. BAP 1989); *In re Rustad*, 110 B.R. 928, 930 (Bankr.D.Mont.1987). Therefore, the Court should consider Arizona law in determining whether an express trust was established or a statutory fiduciary relationship was created as to any of the accounts.

I.   *Whether The Debtor Agreed To Serve As A Trustee Creating A Fiduciary Relationship As To Those Accounts In The Decree.*

█ First, focusing on the accounts set forth in the Decree, the Court notes that a trust may be established orally or in writing. Under Arizona law, what is important is that there be a settlor who intends to establish a trust for the benefit of a third party, that there be a designated trustee, and that there be a *res* for the trust. *Lane Title & Trust Co. v. Brannan*, 103 Ariz. 272, 276–77, 440 P.2d 105, 109–10 (1968).

In this case, the Debtor intended to create a fund to be utilized solely for the benefit of the Plaintiff; as settlor, the Debtor placed the funds in various accounts; in the Decree, the Debtor acknowledged that he held the funds for the sole benefit of the Plaintiff and would serve as trustee; and the funds placed in the accounts served as the *res* for the trust. The Debtor did not refute the nature of the funds as being "trust funds" in that he consistently testified the funds were to be utilized, so that the Plaintiff could obtain a college education.

Having agreed to serve as a trustee, however, the Debtor assumed certain duties and responsibilities pursuant to Arizona law. The Debtor undertook the duty of properly accounting for the funds held in the accounts designated in the Decree. *In re Schuster's Estate*, 35 Ariz. 457, 281 P. 38 (1929); *cf. Ariz.Rev.Stat.Ann.* § 14–7303 (West 1975) (effective January 1, 1974). At the time of trial, the Debtor could not state with any degree of certainty what had happened to all of the funds other than to state that he had

utilized the funds for his personal living expenses. This failure to account was a breach of the Debtor's fiduciary duties to the Plaintiff. *cf. Tovrea v. Nolan,* 178 Ariz. 485, 875 P.2d 144, 147–48 (failure to account may have been a breach of the personal representative's fiduciary duties, but no timely action brought on the matter).

As trustee, the Debtor also agreed to utilize the funds in a manner consistent with the trust. In this case, the Debtor agreed to utilize the funds for the sole benefit of the Plaintiff. Other than the purchase of a car for the Plaintiff in the amount of $2,000, the Debtor utilized all of the funds for himself. This was a breach of the Debtor's fiduciary duties to the Plaintiff. *Matter of Nelson's Estate,* 134 Ariz. 439, 657 P.2d 427 (App. 1982).

II. *Whether The Transfer Of Funds From The Accounts Created Under The Decree Released The Debtor From His Duties As A Trustee.*

As noted in the factual discussion, the Debtor transferred the funds from the Decree into other accounts. In some cases, the funds were transferred into a certificate of deposit which simply noted that the Debtor held the funds as custodian for the Plaintiff. In other cases, the funds were transferred into accounts established under the *Arizona Uniform Gifts to Minors Act.* The Court will discuss the accounts created under the *Arizona Uniform Gifts to Minors Act* later in this opinion. As to those accounts which simply received the funds from the accounts described in the Decree, the Court concludes that the Debtor explicitly agreed to serve as a trustee as to these accounts. Once those funds became a *res* for a trust, the fact that the Debtor subsequently placed the funds in other certificates of deposit did not destroy the trust or the responsibility of the Debtor as a trustee. Certainly a review of the *Restatement (Second) of Trusts* reflects that such transfers would simply be an appropriate reinvestment of the trust assets. *Restatement (Second) of Trusts,* §§ 174, 181, 227 (1959). Therefore, this Court concludes that the transfer of funds, upon maturity, from one certificate of deposit mentioned in the Decree to another certificate of deposit did not release the Debtor from his responsibilities as trustee. Since the Debtor was not relieved of his responsibilities as trustee, the Debtor's subsequent use of the funds solely for the Debtor's benefit was a breach of the Debtor's fiduciary duties to the Plaintiff.

III. *Whether The Debtor Had Independent Duties And Responsibilities To The Plaintiff Under The Arizona Uniform Gifts To Minors Act Or The Subsequent Law Concerning Gifts To Minors.*

Separate from the Debtor's responsibilities as a trustee, the Debtor initially established, and subsequently established after the entry of the Decree, certain accounts under the *Arizona Uniform Gifts to Minors Act.* See *Ariz.Rev.Stat.Ann.* § 44–2071 *et seq.* (West Supp.1987) (enacted 1956, repealed 1988). This repealed statute provided that custodial property included certificates of deposit, which were defined under the statute as "securities." *Ariz.Rev.Stat.Ann.* § 44–2071(5) and (13) (West Supp.1987) (repealed 1988). Under the Act, an adult could make such a gift. An "adult" was described as an individual over the age of eighteen years. *Ariz.Rev.Stat.Ann.* § 44–2071(1) (West Supp.1987) (repealed 1988).

The manner of making a gift of a registered security, such as a certificate of deposit, was specific. The repealed Statute stated, in pertinent part:

A. An adult person may, during his lifetime, make a gift of a security ... to a person who is a minor on the date of the gift:

1. ... if the subject of the gift is a security in registered form, by registering it in the name of the donor, an adult member of the minor's family, a guardian of the minor or a trust company, followed, in substance, by the words: "as custodian for [name of minor] under the Arizona Uniform Gifts to Minors Act."

*Ariz.Rev.Stat.Ann.* § 44–2072(A)(1) (West Supp.1987) (repealed 1988). The certificate of deposit was a security in a "registered form," since the certificate of deposit specified a "person entitled to it or to the rights it

[evidenced] and its transfer [might] be registered upon books maintained for that purpose by or on behalf of the issuer." *Ariz. Rev.Stat.Ann.* § 44–2071(13) (West Supp. 1987) (repealed 1988). In this case, the certificates of deposit designated the adult that was entitled to exercise the rights and remedies of the minor, and the financial institution could register any transfer of the certificates on its books and records as the issuer. Therefore, the certificate of deposit was a security "in registered form."

█ In this case, Account No. 8459–8061 was established after the Decree was entered, but the Debtor conceded that the account was established under the *Arizona Uniform Gifts to Minors Act.* The Court agrees based upon the exhibits that it has reviewed. The Debtor also conceded that the post-Decree Account, No. 8571–9822, was established pursuant to the Act. Several of the accounts actually mentioned in the Decree were also established under the *Arizona Uniform Gifts to Minors Act;* that is, Account Nos. 8404–9871 and 8433–8972. Once the accounts were established under the *Arizona Uniform Gifts to Minors Act,* whether pursuant to the Decree or otherwise, the Debtor irrevocably transferred the funds to the Plaintiff. *Ariz.Rev.Stat.Ann.* § 44–2073 (West Supp.1987) (repealed 1988).[20]

█ Once the funds were placed in said accounts, the custodian had the duty to "collect, hold, manage, invest and reinvest the custodial property." *Ariz.Rev.Stat.Ann.* § 44–2074(A) (West Supp.1987) (repealed 1988). The custodian was required to invest and reinvest the funds in a prudent manner. *Ariz.Rev.Stat.Ann.* § 44–2074(E) (West Supp.1987) (repealed 1988). If the custodian expended the funds, the expense would be for the "support, maintenance, education and benefit of the minor." *Ariz.Rev.Stat.Ann.* § 44–2074(B) (West Supp.1987) (repealed 1988). If the funds were not so expended for the minor's benefit, the custodian was to hold the funds until the minor reached the age of eighteen. *Ariz.Rev.Stat.Ann.* § 44–2074(D) (West Supp.1987) (repealed 1988). Finally, the custodian was required to keep records of all transactions. *Ariz.Rev.Stat.Ann.* § 44–2074(H) (West Supp.1987) (repealed 1988).

█ The Debtor argued at trial that the repeal of the *Arizona Uniform Gifts to Minors Act* somehow vitiated the transfers to the Plaintiff and the Debtor's duties and responsibilities to the Plaintiff. This Court disagrees. The Act was repealed, but Arizona immediately enacted the *Arizona Uniform Transfers to Minors Act. See Ariz. Rev.Stat.* §§ 14–7610, *et seq.* (West Supp. 1994). The new Act is substantially similar to the prior Act, and the historical and statutory notes reflect that the legislature intended that the Act apply to all transfers made of custodial property, or to create custodial property, prior to the effective date of the Act.[21] If the new Act is followed concerning the creation of an account, the gift is irrevocable and the property is indefeasibly vested in the minor. *Ariz.Rev.Stat.Ann.* § 14–7661(B) (West Supp.1994) (effective September 30, 1988).[22] The funds in the account must be utilized for the use and benefit of

---

**20.** *Ariz.Rev.Stat.Ann.* § 44–2073 provides the following:

> **A.** A gift made in a manner prescribed in this article is irrevocable and conveys to the minor indefeasibly vested legal title to the security, life insurance policy, annuity contract or money given, but no guardian of the minor has any right, power, duty or authority with respect to the custodial property except as provided in this article.
>
> **B.** By making a gift in a manner prescribed in this article, the donor incorporates in his gift all the provisions of this article and grants to the custodian, and to any issuer, transfer agent, bank, life insurance company, broker or third person dealing with a person designated as custodian, the respective powers, rights and immunities provided in this article.

**21.** See Historical and Statutory Notes to *Ariz. Rev.Stat.Ann.* § 14–7651 (West Supp.1994).

**22.** *Ariz.Rev.Stat.Ann.* § 14–7661(B) provides in pertinent part:

> **B.** A transfer made pursuant to § 14–7659 is irrevocable, and the custodial property is indefeasibly vested in the minor. The custodian has all the rights, powers, duties and authority provided in this article, and neither the minor nor the minor's legal representative has any right, power, duty or authority with respect to the custodial property except as provided in this article.

the minor. *Ariz.Rev.Stat.Ann.* § 14–7664 (West Supp.1994) (effective September 30, 1988).[23] The custodian is still required to keep records of all transactions. *Ariz.Rev. Stat.Ann.* § 14–7662(E) (West Supp.1994) (effective September 30, 1988).[24] The custodian is required to hold the funds until the minor generally reaches the age of twenty-one and to turn said funds over to the minor, unless the funds are utilized for the minor's benefit in the interim. *Ariz.Rev.Stat.Ann.* §§ 14–7654; 14–7670(1); and 14–7664 (West Supp.1994) (effective September 30, 1988).[25]

The Debtor has not presented this Court with any statutory or case law authority which reflects that the change in Arizona law concerning gifts to minors somehow vitiated the absolute nature of the gifts to the Plaintiff herein and the Debtor's responsibilities to the Plaintiff as a fiduciary. Arguably the only effect the new Act had was to change the age at which certain minors would receive custodial property if the custodianship was created under the new Act.[26]

Under either the *Arizona Uniform Gifts to Minors Act* or the *Arizona Uniform Trans-fers to Minors Act,* the Debtor became a fiduciary upon the issuance of certificates of deposit or the establishment of the deposit account. This fiduciary duty did not lapse upon the change in Arizona law concerning gifts to minors or the transfer of funds from account to account by the Debtor.

**IV. *Whether The Transfer Of Funds From The Accounts Established Under The Arizona Uniform Gifts To Minors Act Or Subsequent Law Concerning Gifts To Minors Relieved The Debtor Of The Duties And Responsibilities Of A Fiduciary.***

Once the accounts were established under the *Arizona Uniform Gifts to Minors Act,* the Debtor undertook certain duties and responsibilities as a fiduciary thereunder. As noted previously, these duties and responsibilities were not vitiated upon the change in Arizona law concerning gifts to minors. These duties and responsibilities were also not vitiated upon the reinvestment of funds from account to account. As noted previously, these gifts to the Plaintiff were irrevoca-

---

**23.** *Ariz.Rev.Stat.Ann.* § 14–7664 provides:

    **A.** A custodian may deliver or pay to the minor or expend for the minor's benefit as much of the custodial property as the custodian considers advisable for the use and benefit of the minor, without court order and without regard to either the duty or ability of the custodian personally or of any other person to support the minor or any other income or property of the minor which may be applicable or available for that purpose.
    **B.** On petition of an interested person or the minor if the minor is at least fourteen years of age, the court may order the custodian to deliver or pay to the minor or expend for the minor's benefit as much of the custodial property as the court considers advisable for the use and benefit of the minor.
    **C.** A delivery, payment or expenditure made pursuant to this section does not affect an obligation of a person to support the minor.

**24.** *Ariz.Rev.Stat.Ann.* § 14–7662(E) provides:

    **E.** A custodian shall keep records of all transactions with respect to custodial property, including information necessary for the preparation of the minor's tax returns, and shall make them available for inspection at reasonable intervals by a parent or legal representative of the minor or by the minor if the minor is at least fourteen years of age.

**25.** See note 23, *supra* as to provisions of Section 14–7664. Sections 14–7654 and 14–7670(1) provide:

    **§ 14–7654. Transfer by gift or exercise of power of appointment**
    A person may make a transfer by irrevocable gift to, or the irrevocable exercise of a power of appointment in favor of, a custodian for the benefit of a minor pursuant to § 14–7659.
    **§ 14–7670. Termination of custodianship**
    The custodian shall transfer in an appropriate manner the custodial property to the minor or the minor's estate on the earlier of:
    **(1)** The minor's twenty-first birthday with respect to custodial property transferred pursuant to § 14–7654 or § 14–7655.

**26.** *Ariz.Rev.Stat.Ann.* § 44–2074(D) (West Supp. 1987) (repealed 1988), permitted the minor to receive the funds at the age of eighteen. The new Act provided that the custodianship might be terminated at the age of eighteen *or* twenty-one depending on the type of transfer. *Ariz.Rev. Stat.Ann.* § 14–7670 (West Supp.1994). However, the new Act could not extend the termination date of prior custodianships created under the repealed law. See *Ariz.Rev.Stat.Ann.* § 14–7651 (West Supp.1994), *Historical and Statutory Notes.* Therefore, if the custodianship was to terminate at the time the minor reached eighteen under the prior law, the custodianship could not be extended until the minor reached the age of twenty-one under the new law.

ble. Therefore, the transfer of the funds from account to account would have no effect on the Debtor's duties and responsibilities as a fiduciary—the nature of the investment was only being modified.

As to Account Nos. 8404–9871, 8433–8977, 8265–3493 (into which Account the funds from Account No. 8433–8972 were transferred) and 8571–9822, the Debtor did *not* (i) expend the funds for the use and benefit of the Plaintiff, except arguably as to the purchase of a car in the amount of $2,000; (ii) keep accurate records of all of the transactions; and (iii) turn over the funds to the Plaintiff when he reached the age of eighteen.[27] All of these events occurred after the Debtor, as custodian for the accounts, was designated a fiduciary.

## V. *Whether The Debtor Is Liable To The Plaintiff For A Defalcation While Acting As A Fiduciary.*

█ This Court has previously referred to the Debtor's breach of his fiduciary duties either as a trustee, as to those accounts set forth in the Decree, or as a custodian as to those accounts established under Arizona law concerning minors. Is a defalcation a breach of a fiduciary duty? Does a breach of a fiduciary duty reflect misconduct or bad faith, or is it mere inadvertence, mistake or negligence? The issue is not easy to resolve since several panels of the Bankruptcy Appellate Panel (hereinafter "BAP") have reached conflicting decisions.

The Ninth Circuit has not resolved the issue of what constitutes a defalcation. In the decision of *In re Short,* 818 F.2d 693 (9th Cir.1987), the Court concluded that Short was a fiduciary to the other partners in the joint venture. Short utilized the funds of the joint venture for personal living expenses, and he improperly paid over the profits of the joint venture to certain partners. *Id.* at 694. By implication, the Ninth Circuit considered this improper management of the

profits of the joint venture to be a defalcation. *Id.*

The BAP decision of *In re Baird,* 114 B.R. 198 (9th Cir. BAP 1990) applied Arizona law and determined that a statutory trust had been created for the benefit of the persons furnishing labor, materials, services, etc., to a general contractor concerning the construction of a residence. The BAP concluded that the general contractor held the funds in trust and that the funds were only to be utilized to pay the subcontractors for labor, materials, services, etc., on that project. *Id.* at 203. The parties stipulated that the industry practice was for general contractors to pay subcontractors from other funds—not necessarily from those funds paid on the specific project. *Id.* at 201. Although the subcontractor was paid from the funds deposited for the specific project and from other funds of the general contractor, the subcontractor was not paid in full for the work completed on the residence. Irrespective of the common industry practice, the BAP concluded that a defalcation had occurred. It noted:

> A defalcation is a failure of a party to account for money or property that has been entrusted to them. [Citation omitted.] In the context of Section 523(a)(4), the term "defalcation" includes innocent, as well as intentional or negligent defaults so as to reach the conduct of all fiduciaries who were short in their accounts. *In re Gonzales,* 22 B.R. 58, 59 (9th Cir. BAP 1982).

*Id.* at 204.

However, the more recent BAP decision of *In re Martin,* 161 B.R. 672 (9th Cir. BAP 1993) notes the divergence of authority on what constitutes a defalcation. What is troubling, as noted by the dissent in *Martin,* is that the Panel has created a new, more stringent standard for determining what constitutes a defalcation, which standard is inconsistent with the test previously enunciated by the BAP in two prior Panel decisions. *Id.* at 679–80.[28] In this case, the different stan-

---

27. See note 26, *supra.*

28. This Court believes that the dissent's analysis is more persuasive. A fiduciary relationship requires a higher standard of dealing with the affected individual. Therefore, the fiduciary's

mere inadvertence or negligence should constitute a defalcation. If some kind of wrongful conduct or bad faith is required to pursue a claim under Section 523(a)(4), the distinctions between subsections 523(a)(4) and (a)(6) are blurred.

dards enunciated by the various Panels of the BAP have no effect, since the Plaintiff has met the more stringent standard set forth in *Martin*.

Inasmuch as the funds placed in these accounts constituted funds held in trust or irrevocable gifts, the Debtor cannot now succeed on the defense that he expended all of the funds on the Debtor's personal living expenses or to repay the Debtor's loans because the Plaintiff could not fulfill the Debtor's desire that the Plaintiff utilize the funds solely for a college education. If the Debtor did not believe the funds could be expended for the Plaintiff's benefit, the Debtor was required, as a fiduciary, to hold the funds set forth in the Decree or as established under the Arizona law concerning gifts to minors until the Plaintiff reached the age of eighteen. This the Debtor did not do.

Having engaged in bad faith or misconduct in dissipating all of the Plaintiff's funds, except for perhaps the sum of $2,000 which was used to purchase a car for the Plaintiff, the Debtor became liable to the Plaintiff for a defalcation while acting in a fiduciary capacity. As a result, the Debtor is liable to the Plaintiff pursuant to 11 U.S.C. § 523(a)(4).

Since the Court has concluded that the Debtor is liable to the Plaintiff pursuant to 11 U.S.C. § 523(a)(4), the Court need not consider the issues presented under 11 U.S.C. § 523(a)(6).

As to the award of damages, the Plaintiff has not provided the Court with a detailed memorandum concerning the determination of an appropriate interest rate to be earned on the funds which were dissipated. Moreover, the damages have only been calculated as of July, 1993. The Debtor correctly notes such deficiencies in his trial memorandum. Therefore, by separate notice, the Court shall schedule a hearing on the computation of damages.